■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE MANUEL POLLOCK, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NICOSIA GARCIA, Appellant.—Judgment, Supreme Court, New York County, entered June 24, 1976, convicting the defendants of the criminal sale of a controlled substance in the first degree (Penal Law, § 220.43), criminal possession of a controlled substance in the first degree (Penal Law, § 220.21), criminal possession of a controlled substance in the third degree (Penal Law, § 220.16) and conspiracy in the first degree (Penal Law, § 105.16), and sentencing them to indeterminate terms of imprisonment of from 15 years to life for the criminal sale of a controlled substance in the first degree and for criminal possession of a controlled substance in the first degree, and to lesser concurrent sentences on the other charges, affirmed. The appeal from the order of June 24, 1976, denying the presentence motion to set aside the verdict pursuant to CPL 330.30 (subd 3) is dismissed as subsumed in the judgment. Order entered February 1, 1977, which denied the motion to vacate the judgment pursuant to CPL 440.10 (subd 1, par [g]), reversed, on the law and as a matter of discretion in the interest of justice, and the matter remanded for a hearing. Following verdict, but prior to sentencing, the defendants moved pursuant to CPL 330.30 (subd 3) to set aside the verdict on the ground of newly discovered evidence. No separate appeal lies from an order denying a motion to set aside a verdict, although the determination of the motion is reviewed on appeal from the judgment, *People v La Rocca* (37 AD2d 974) (cf. *People v White,* 57 AD2d 536), and so the appeal from the order of June 24, 1976 denying the motion to set aside the verdict should be dismissed. Defendants herein, together with a co-defendant, Robert Reyes, were jointly indicted and charged with the sale of a controlled substance in the first degree and related crimes arising from the sale of a substantial amount of cocaine to an undercover detective. Prior to the trial, Reyes, due to illness, was granted a severance. At the trial of the defendants herein he invoked the privilege against self incrimination. At his own trial, he was acquitted. There was sufficient evidence beyond a reasonable doubt to convict the defendants herein, and we have examined the points raised by the defendants and find no merit therein. However, the defendants rely on Reyes' testimony at his own trial and his now willingness to testify at a retrial of the defendants on their motion to vacate the judgment pursuant to CPL 440.10 (subd 1, par [g]). We believe that a hearing should be held with respect thereto, and we remand for that purpose. Concur—Kupferman, J. P., Silverman and Fein, JJ.

Sandler, J., dissents in part as to defendant Pollock in a memorandum, as follows: I am in agreement with the court's response to the issues presented

by defendant Garcia's motion for a new trial. However, I believe the conviction of the defendant Pollock should be reversed because the trial court, in denying his *Sandoval* motion, failed to apply the balancing test there mandated. The defendants were charged with the criminal sale of a controlled substance in the first degree arising out of an alleged sale of some four pounds of cocaine to an undercover police officer. Prior to trial, Pollock applied, pursuant to *People v Sandoval* (34 NY2d 371), to preclude the prosecution from cross-examining him should he take the witness stand in his own defense as to a pending drug charge quite comparable to that for which he was on trial. The motion was denied. The critical question on such a motion is whether (p 378) "the prejudicial effect of the admission of evidence thereof for impeachment purposes would so far outweigh the probative worth of such evidence on the issue of credibility as to warrant its exclusion." I should have thought it obvious that the prejudicial impact of inquiry with regard to a pending narcotic charge closely analogous to the charge, on trial, would inevitably far exceed the legitimate value for impeachment purposes of such inquiry. However, the post-*Sandoval* decisions have shown a clear disposition to grant considerable discretion to Trial Judges in this area. (See, e.g., *People v Duffy*, 36 NY2d 258, 262-263.) What is more disturbing, however, is that in his explanatory comments, the Trial Judge indicated an approach to the issue that cannot be reconciled with the balancing test articulated in *Sandoval*. Thus, he stated: "The case has to be a rather extreme one, in my opinion or the circumstances have to be extreme, when such a motion is granted. As long as the crime involved does entail moral turpitude it seems to me that the jury has a right to know about it in evaluating the credibility of the witness." Although reaffirming the broad discretionary power of the trial court with regard to such motions, the Court of Appeals has made it unmistakably clear that the Trial Judge must apply the balancing test set forth in *Sandoval* in the exercise of that discretion. (See *People v Mayrant*, 43 NY2d 236, 239; *People v Davis*, 44 NY2d 269.) In *People v Mayrant (supra,* p 240) the court said: "The difficulty with the Trial Judge's determination here, however, is that, from the record before us, its language being accorded its ordinary meaning, we are compelled to conclude that, in denying defendant's application, the court failed to consider both of the available alternatives * * * To the contrary, the Judge's words suggest that he took into account only 'the defendant's prior propensities for committing violent acts.' " The identical error occurred here. As in *Mayrant,* the surrounding circumstances are such that the error, which could have effectively precluded the defendant from testifying must be deemed prejudicial. Accordingly, Pollock's conviction should be reversed and a new trial directed.